Dario ESCOBAR, Gabriel Alarcon, Jose Barajas, Idilio Flores Quintana, Carlos Mariscal, Mario Martinez, Cesar Perez Lopez, Margarito Lopez Perez, Andres Reyes Barbosa, Samuel Romero, Crisogono Sanchez, Filiberto Mejia Sandoval and Esteban Cedillo Sanchez, Plaintiffs,

v.

Anne BAKER d/b/a Anne's Berry Farm, Jerry Dobbins d/b/a Dobbins Berry Farm and Apolinar Soto, Defendants.

No. C92–5016Z.

United States District Court,
W.D. Washington,
at Seattle.

Feb. 24, 1993.

Rebecca Ann Smith, Evergreen Legal Services, Everett, WA, for plaintiffs.

Darrell Peeples, Swanson, Parr, Cordes, Younglove & Peeples, Olympia, WA, Paul R.J. Connolly, Donaldson, Albert, Tweet, Connolly, Hanna & Muñiz, Salem, OR, for defendants.

## ORDER

ZILLY, District Judge.

THIS MATTER comes before the Court on plaintiffs' motion for partial summary judgment (docket no. 23) and defendants' motion for summary judgment (docket no. 51). There is also pending before the Court defendants' motion to dismiss with prejudice all claims of plaintiffs Gabriel Alarcon, Crisogono Sanchez, Dario Escobar, Andres Reyes Barbosa and Filiberto Mejia Sandoval, based on their failure to appear for depositions. That motion is noted for March 12, 1993. The Court held a telephone conference with counsel on February 24, 1993, at which time plaintiffs' counsel stated that she will oppose defendants' motion only to the extent it seeks dismissal with prejudice. Plaintiffs intend to file a response requesting that dismissal be without prejudice. Upon consideration of all the papers, the Court will dismiss these plaintiffs' claims either with prejudice or without prejudice. Accordingly, this Order, to the extent it grants summary judgment on

certain of plaintiffs' claims, shall not apply to the claims of plaintiffs Gabriel Alarcon, Crisogono Sanchez, Dario Escobar, Andres Reyes Barbosa and Filiberto Mejia Sandoval.

The Court, having considered plaintiffs' motion for partial summary judgment (docket no. 23), defendants' motion for summary judgment (docket no. 51), and all papers filed in support of and in opposition to such motions, including plaintiffs' supplemental memorandum and defendants' response to plaintiffs' supplemental memorandum, and having heard oral argument on February 11, 1993, hereby GRANTS in part and DENIES in part both motions. The Court GRANTS summary judgment on (1) plaintiffs Jose Barajas, Mario Martinez, Cesar Perez Lopez, Margarito Lopez Perez, and Esteban Cedillo Sanchez's[1] claims that Baker violated the disclosure requirements under 29 U.S.C. § 1821(a); (2) plaintiffs'[2] claims that Dobbins violated the disclosure requirements under 29 U.S.C. § 1821(a); (3) plaintiffs' claim that Baker violated the labor camp certification requirement under 29 U.S.C. § 1823(b)(1); and (4) plaintiffs' claim that Baker violated the recordkeeping requirements under 29 U.S.C. § 1821(d). The Court DENIES plaintiffs' motion in all other respects. The Court GRANTS defendants' motion for summary judgment on (1) plaintiffs' claims that Soto violated the farm labor contracting registration provisions of the Agricultural Workers Protection Act (AWPA) and the Washington State Farm Labor Contractor Act (FLCA), (2) plaintiffs' claims that Baker and Dobbins used an unlicensed farm labor contractor in violation of the AWPA and FLCA, and (3) plaintiffs' claims that defendant Baker violated RCW 49.48.010.

The Court DENIES defendants' motion in all other respects.

*Background*

### A. Factual Summary

Plaintiffs are migrant farmworkers of Mexican descent.[3] In 1991, all plaintiffs moved from homes in Mexico or California northward. Many moved first to a farm in Oregon where they sought work. They were later transported to defendants' farms in Washington where they were employed to pick berries. How they heard about employment opportunities at defendants' farms and how they got there are important facts for purposes of deciding these motions.

In 1991, defendant Anne Baker, a farm owner in Washington, spoke with Roberto Soto, the uncle of her foreman, Hipolito Soto. Roberto Soto told Anne Baker, "If you need people, I can get the people." Anne Baker replied, "okay, get me some." Baker Depo. (docket no. 54) at 50. Baker told Roberto Soto that she had a place for them to stay and work for about four to five months. *Id.* at 52. She also told Roberto Soto that workers must pick enough berries to earn minimum wage, keep the place clean and not drink. *Id.* at 52. Roberto Soto then called a friend of his in Oregon, Paulino Garcia, to enlist his help. Paulino Garcia placed an advertisement on the radio regarding the need for workers. Anne Baker states that she did not know about this ad at the time it was placed. Workers, including plaintiffs Gabriel Alarcon, Jose Barajas, Cesar Lopez Perez, Margarito Lopez Perez, Mario Martinez, Crisogono Sanchez Soto, and Esteban Cedillo Sanchez, all of whom were in Oregon at the time, heard about the work. Some heard the radio ad. Some heard about the

---

**1.** These plaintiffs include all plaintiffs who were recruited by defendant Baker. There are questions of fact concerning whether the remaining plaintiffs, Idilio Flores Quintana, Carlos Mariscal and Samuel Romero, were recruited by Baker. These questions of fact preclude summary judgment as to those plaintiffs.

**2.** The plaintiffs entitled to summary judgment on this claim are the plaintiff-workers that Dobbins obtained from Baker's labor pool. According to the plaintiffs' answers to interrogatories and defendant Dobbins' payroll records (Exs. 2 & 8, Plaintiff's Exhibits), all of the plaintiffs were re-

cruited from Baker's farm to work on Dobbins' farm.

**3.** The plaintiffs have asserted their Fifth Amendment right against self-incrimination in response to interrogatories concerning whether they were authorized to be employed by the INS at the time they applied for work on the defendants' farms. For purposes of these motions, the Court will assume that the plaintiffs were undocumented aliens at the time they were employed by defendants.

work from friends. Others were approached directly by Garcia. The interested workers then went to Paulino Garcia's home in Cornelius, Oregon.

Garcia called Anne Baker to tell her that ten workers were available. Defendant Baker, after asking whether the workers could wait a few days and being told that they had nowhere else to go, told Garcia that she would have them picked up right away. Baker then sent Hipolito Soto, her foreman, to pick up the workers and transport them to Baker's farm in Washington. Hipolito Soto testified that Baker told him to pick up the workers in Cornelius, tell them that beer, fights[8] and women were not allowed at the farm, that workers must pick the minimum of $4.25 per hour, and that workers could also work on Jerry Dobbins' farm. Defendant Hipolito Soto filled his pickup truck with free gasoline at defendant Baker's gas pump and drove to Oregon. Defendant Soto claims that when he arrived at Garcia's house, he told all of the workers about the conditions of employment set by Anne Baker. Most of the workers claim that Hipolito Soto and Paulino Garcia promised them work for four to five months picking strawberries and raspberries, and told them that food and housing would be provided by Anne Baker. See, e.g., Plaintiff Martinez, Answer to Defendants' Interrogatory No. 1, Plaintiff Sanchez's Answer to Defendants' Interrogatory No. 1. Hipolito Soto did not give the workers anything in writing concerning the terms and conditions of the workers' employment. Soto then transported certain of the plaintiffs to Anne Baker's farm, an hour's drive away, in the back of his pickup truck.[4]

The plaintiffs arrived at Anne Baker's farm approximately June 5 through June 8, 1991. This includes not only plaintiffs who were transported from Oregon by Soto, but also workers who were hired after they approached Baker or Soto for work,[5] and one plaintiff, Samuel Romero, who went to the farm after meeting Soto at an English class in Woodland, Washington. See Plaintiff Romero's Answer to Defendants' Interrogatory No. 1; H. Soto Depo. at 86–91. There was no work immediately available at the farm when they arrived. Work became available at the Baker farm on June 19, 1991, when there was work for approximately 2.5 to 3 hours. See Plaintiffs' Ex. 7.

While the workers were waiting for work to begin at the Baker farm, Hipolito Soto chose a number of workers and transported them in a bus to defendant Dobbins' farm.[6] Baker Depo. at 44, 85–88. The first day this occurred was June 12, 1991. Nelson Depo. at 23, 24. Baker and Dobbins often shared workers, including Hipolito Soto. Hipolito Soto, Baker's foreman, worked for Dobbins as a row boss. Soto lived on Baker's farm and was paid $6.00 per hour. Dobbins paid Soto $70.00 per day for days he worked as a row boss.

Karen Nelson, bookkeeper for the Dobbins farm, testified that when the plaintiff workers arrived at the farm, she showed them a written paper which provided worker information required to be disclosed under the AWPA. See Plaintiffs' Ex. 3 for copy of disclosure form. Nelson testified that she usually provides this form to employees at the time they are filling out their I–9 and W–4 forms, which occurs while the employees are working in the field. See Nelson Affid. (docket no. 56) at p. 2. Nelson testified that when she hands employees the disclosure form, she usually tells them, "Here it is. You can look at it while you're filling out your form." See Nelson Depo., Plaintiffs' Supplemental Exhibits, at p. 22. The Dobbins farm did not give the employees copies of the form to keep. Id.

4. Soto testified that he made two trips from Cornelius, Oregon to Anne Baker's farm in La Center, Washington. The workers he transported on those trips were Gabriel Alarcon, Jose Barajas, Mario Martinez, Cesar Lopez, Margarito Lopez Perez, Andres Reyes Barbosa, Crisogono Sanchez, Filiberto Mejia Sandoval, and Esteban Cedillo Sanchez. See Soto Depo. at _____ (the transcript of Soto's deposition provided to the Court does not have page numbers).

5. This includes plaintiffs Escobar, Mariscal and Quintana.

6. This occurred on more than one occasion. According to plaintiffs' answers to interrogatories and defendant Dobbins' payroll records, all of the plaintiffs at some time during their stay at Baker's farm were taken to Dobbins' farm to work.

Defendant Dobbins had a rule that workers may be employed only if they picked enough poundage to equal minimum wage. The minimum wage cutoff was established daily. Dobbins testified that he picked a number of pounds that the workers would have had to pick and that he did this after work was over each day. *See* Dobbins Depo., Plaintiffs' Exhibits, at pp. 35–36. Defendant Dobbins testified that plaintiffs were told orally about this rule. The rule was not specified in the disclosure form. Rather, the disclosure form stated that the piece rate to be paid was "?" per pound. *See* Plaintiffs' Exhibits, Ex. 3.

Meanwhile, at the Baker farm, the workers were visited by Enrique Santos, a paralegal from Oregon Legal Services, in response to a phone call from a worker. *See* Santos Depo. at 42. This visit occurred on June 13. *Id.* Santos told the workers about their employment rights, including their right to receive a minimum wage per hour even if they were working at a piece rate. He made this announcement in defendant Soto's presence.

After Santos' visit, Baker posted a handwritten poster in the barracks stating that workers had to pick enough berries to earn minimum wage. *See* Baker Depo. at 110; Exhibit 9. Plaintiffs claim that after Santos' visit, Hipolito Soto harassed them about contacting Oregon Legal Services, making comments about "damned lawyers" and the like.

After the 2.5 to 3 hours of work offered to the workers on June 19, no more work was made available at the Baker farm until the pay period ending June 30, when most workers were offered two days of work. Plaintiffs Idilio Flores Quintana and Samuel Romero quit their jobs with Baker's farm because, they claim, work was not offered to them as promised.

Some plaintiffs worked at the Dobbins farm on June 19 and June 21. After that date plaintiffs Idilio Quintana, Mario Martinez, Cesar Perez Lopez, Margarito Lopez Perez and Esteban Cedillo Sanchez were fired. According to defendants, these workers were fired because they failed to pick the minimum wage for two days. Two other workers, Crisogono Sanchez and Gabriel Alarcon, were not hired by Dobbins because they had "bad INS papers."

Plaintiffs contend that they were fired because they sought legal assistance from Oregon Legal Services. Defendants Baker and Dobbins claim that they took no personnel action on the basis of plaintiffs' exercising AWPA rights or contacting Oregon Legal Services.

### B. *Motions for Summary Judgment*

Both parties moved for summary judgment on a number of issues. By Minute Order entered January 5, 1993 (docket no. 80), the Court denied defendants' motion for summary judgment on the following claims: (1) plaintiffs' claim that Baker violated substantive federal and state housing standards in violation of § 1823(a); (2) plaintiffs' claim that Dobbins violated the terms of the working arrangements in violation of 29 U.S.C. § 1822(c), RCW 19.30.110(5) and RCW 19.-30.120(2); (3) plaintiffs' claim that Dobbins and Soto breached contracts with the plaintiffs; and (4) plaintiffs' claims that Dobbins and Baker retaliated against plaintiffs in violation of 29 U.S.C. § 1855(a) and RCW 19.-30.190(4). The Court concluded that there are genuine issues of material fact precluding summary judgment on these issues. The Court heard oral argument on the remaining issues.

#### 1. Remaining Issues

Plaintiffs move for partial summary judgment on the following claims: (1) Hipolito Soto violated the *licensing* sections of AWPA and FLCA by failing to register as a farm labor contractor; (2) defendants Baker and Dobbins violated the AWPA and FLCA by using an unlicensed farm labor contractor; (3) defendants violated the *disclosure* requirements of the AWPA and FLCA because they failed to provide timely written disclosures of working terms and conditions to the workers; (4) Baker failed to license her labor camp under the AWPA and Washington law.

Defendants move for summary judgment or in the alternative partial summary judgment, claiming: (1) all AWPA claims should be dismissed because the plaintiffs are undocumented aliens; and (2) the plaintiffs'

state-law claims based on the FLCA should be dismissed because plaintiffs failed to establish a pre-condition to the initiation of a lawsuit, i.e., the filing of a notice of claim with the Director of Washington's Department of Labor and Industries. Defendants also argue that the Court should dismiss plaintiffs' claims that Baker violated AWPA's recordkeeping requirements, as well as RCW 49.48.010, because the amount plaintiffs owed for food was never "withheld" from plaintiffs' paychecks.

*Discussion*

## I. ARE UNDOCUMENTED ALIENS COVERED BY THE AWPA?

█ The Court concludes that the AWPA offers protections to both documented and undocumented workers. In *In re Reyes*, 814 F.2d 168, 170 (5th Cir.1987), *cert. denied, Griffin & Brand of McAllen, Inc. v. Reyes*, 487 U.S. 1235, 108 S.Ct. 2901, 101 L.Ed.2d 934 (1988), the Fifth Circuit held that the protections of the AWPA are applicable to citizens and aliens alike, and whether the alien is documented or undocumented is irrelevant. Moreover, in many cases under the AWPA, courts have certified classes of plaintiffs that specifically included undocumented aliens. *See Montelongo v. Meese*, 803 F.2d 1341, 1352 (5th Cir.1986), *cert. denied, Martin v. Montelongo*, 481 U.S. 1048, 107 S.Ct. 2179, 95 L.Ed.2d 835 (1987); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir.1990) (class consisted of 1349 undocumented workers who were employed by defendant during the 1976–77 picking season). This is persuasive authority that undocumented workers may seek recovery under the AWPA.

## II. MAY PLAINTIFFS MAINTAIN AN ACTION UNDER THE FLCA?

█ Defendants claim that plaintiffs' state-law claims based on the FLCA should be dismissed because plaintiffs failed to establish a pre-condition to the initiation of a lawsuit, i.e., the filing of a notice of claim with the Director of Washington's Department of Labor and Industries. The plaintiffs counter that they did file a notice of claim

with the DOL, albeit *after* they initiated this lawsuit.[7]

The Court concludes that plaintiffs' filing of a notice of claim after the initiation of this lawsuit does not bar plaintiffs' claims under the FLCA. RCW 19.30.170 states:

> After filing a notice of claim with the director, ... any person aggrieved by a violation of this chapter or any rule adopted under this chapter may bring suit in any court of competent jurisdiction ... *without regard to exhaustion of any alternative administrative remedies provided in this chapter.*

(Emphasis added.) While this provision does impose a notice requirement, the statute does not specify the consequences of failure to file in a timely manner. However, the statute expressly permits aggrieved parties to pursue their legal remedies without first exhausting administrative remedies under that chapter.

## III. DID DEFENDANTS VIOLATE THE LICENSING REQUIREMENTS OF THE AWPA AND FLCA?

Under both the AWPA and the FLCA, "farm labor contractors" must be registered. 29 U.S.C. § 1811, RCW 19.30.020.

Under the AWPA, a "farm labor contractor" is defined as:

> any person, other than an agricultural employer, an agricultural association, or an employee of an agricultural employer or agricultural association, who, for any money or other consideration paid or promised to be paid, performs any farm labor contracting activity.

29 U.S.C. § 1802(7). The term "farm labor contracting activity" means "recruiting, soliciting, hiring, employing, furnishing, or transporting any migrant or seasonal agricultural worker." 29 U.S.C. § 1802(6). Because the terms are in the disjunctive, plaintiffs need only prove that the alleged farm labor contractor engaged in *one* of the enumerated farm labor contracting activities in order to show coverage under the Act. *Soliz*

7. The Complaint in this case was filed on January 16, 1992. The plaintiffs sent notice of the claim to the DOL on April 21, 1992. *See* Exs. A & B in Plaintiffs' Supplemental Exhibit Index.

*v. Plunkett,* 615 F.2d 272, 276 (5th Cir.1980); *Martinez v. Shinn,* C–89–813–JBH (E.D.Wash. May 20, 1991) at 34, 1991 WL 84473.

Under the FLCA, a "farm labor contractor" is defined as "any person, or his or her agent or subcontractor, who for a fee, performs any farm labor contracting activity." RCW 19.30.010(2). "Farm labor contracting activity" means "recruiting, soliciting, employing, supplying, transporting, or hiring agricultural employees." RCW 19.30.010(3). The chapter excludes from licensing requirements "any person who performs any [farm labor contracting activity] only within the scope of his or her regular employment for one agricultural employer on whose behalf he or she is so acting." RCW 19.30.010(6).

Plaintiffs claim that Hipolito Soto was a farm labor contractor within the meaning of the AWPA and FLCA and as such, was required to be licensed. Plaintiffs claim further that Dobbins and Baker are liable for using an unlicensed contractor. *See* 29 U.S.C. § 1842, RCW 19.30.200.

In determining whether Hipolito Soto was a farm labor contractor under the AWPA and FLCA, the Court must determine (1) whether he performed any farm labor contracting activity, (2) for a fee. If the Court determines that Soto is a farm labor contractor, the Court must then determine whether an exemption from coverage applies.

## A. *Did Hipolito Soto Perform Any Farm Labor Contracting Activities?*

It is undisputed that Soto discussed employment at the Baker and Dobbins' farms with workers in Oregon and transported them to Washington so that they could work on those farms. Since the AWPA and FLCA require only that the alleged contractor perform any one of the enumerated activities to qualify as a farm labor contractor, it is sufficient for purposes of both statutes that Soto transported the workers to Oregon to work on the farms. For that reason, the Court finds that Soto performed farm labor contracting activities.

**8.** The transcript of Hipolito Soto's deposition submitted to the Court does not have page num-

## B. *Did Soto Receive A Fee for His Farm Labor Contracting Activities?*

The AWPA provides that a farm labor contractor is one who performs farm labor contracting activities "for any money or other valuable consideration paid or promised to be paid." 29 U.S.C. § 1802(7). The FLCA has substantially the same requirement. RCW 19.30.010(7).

It is undisputed that neither Baker nor Dobbins paid Soto a wage for recruiting the Oregon workers or driving them from Oregon to Washington. *See* Baker Affid. (docket no. 54) at 3; Dobbins Affid. (docket no. 55) at 2–3; Soto Affid. (docket no. 57) at 2. The only benefit Baker provided Soto for picking up and transporting the Oregon workers was free gasoline for Soto's truck. Baker claims that this does not constitute a "fee" because (1) the gas was given to Soto as a gift, and (2) payment of a "fee" requires receipt of consideration for profit.

■ The Court concludes that with respect to defendant Baker, the reimbursement of Soto's gasoline expenses constitutes a fee. The argument that the gas was a gift fails because it was not "a voluntary transfer of property without consideration." *See Bellevue v. State,* 92 Wash.2d 717, 720, 600 P.2d 1268 (1979) (defining "gift"). There is no question that Baker gave Soto gasoline for his truck in exchange for picking up the workers in Oregon. This is supported by Soto's testimony that Baker did not normally give him gasoline from the pumps on her farm; she only gave him gas "that time." *See* Soto Depo. at __.[8] Moreover, courts have held that reimbursement of expenses constitutes payment of a fee, and there is no requirement that a profit be made in order to find that a "fee" has been paid. *See De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 234–35 (7th Cir.1983) (compensation received to cover housing costs constituted "fee" where the compensation was in return for providing a ready work force to growers); *Usery v. Point Sal Growers and Packers,* 80 Lab.Cas. (CCH) ¶ 33,483, 1977 WL 1629

bers.

(C.D.Cal.1977) (profit is not required; payment of all expenses incurred in recruiting workers constituted a "fee"). Finally, the AWPA is a remedial statute and should be construed broadly to effectuate its goals. *De La Fuente*, 713 F.2d at 234.

▮ Defendants contend that RCW 19.30.-010(7)(b) specifically requires that the value of the consideration given exceed the amount expended by the recipient for the consideration to be considered a "fee." The Court does not read that section so narrowly. RCW 19.30.010(7) broadly defines "fee" as any money or other valuable consideration paid to a farm labor contractor, or valuable consideration received by a farm labor contractor, which would *include* "the difference between any amount received ... and the amount paid out" by the farm labor contractor. The statute does not define valuable consideration or otherwise limit its meaning.

With respect to defendant Dobbins, the Court finds that Dobbins never paid Soto a "fee" for any farm labor contracting activities. It is undisputed that the only consideration Soto ever received from Dobbins was a $70.00 daily wage for days Soto worked for Dobbins as a row boss. Dobbins stated in his affidavit that he never paid Soto any money to drive workers to or from his farm. Under the facts of this case, Dobbins' payment of a daily wage to Dobbins did not constitute a fee for farm labor contracting activities.[9]

### C. Is Soto Exempt from Coverage of the Act as a Dual "Employee" of Baker and Dobbins?

Under the AWPA, the term "farm labor contractor" does not include "an employee of an agricultural employer." 29 U.S.C. § 1802(7). It is undisputed that Baker and Dobbins are agricultural employers. The question posed by defendants is whether Soto is exempt from coverage of the Act as an "employee" of both Baker and Dobbins.

The Ninth Circuit, upon reviewing the legislative history of the exemption in question, has recognized that:

> The purpose of the registration provision in both the present Act and its predecessor ... was to aid the enforcement of the regulatory provisions against traditional "crew leaders" or "crew pushers" who recruited crews of migrant and seasonal workers and moved them from job to job. Although these "crew leaders" or "crew pushers" were regarded as the primary offenders against migrant and seasonal workers, they were "usually transient, and hard to find ..., and even harder to locate and control." [Citation omitted] These considerations did not apply to farmers and processors who were permanently located, tied to their farm or processing plant, and thus easily found and held accountable.... Congress regarded the application of the registration requirement to such persons as "redundant and unnecessary" and sought to end it by the provision of the new Act exempting "agricultural employers" from registration.

*Mendoza v. Wight Vineyard Management,* 783 F.2d 941, 944 (9th Cir.1986).

▮ With respect to whether Soto is exempt from the registration requirements of

---

9. The Court is not suggesting that a daily wage cannot be considered a "fee" under any circumstances. It is well established that under certain circumstances a worker's salary may constitute a "fee" for purposes of the AWPA. *See, e.g., Montelongo v. Meese,* 803 F.2d 1341, 1346 (5th Cir. 1986), *cert. denied,* 481 U.S. 1048, 107 S.Ct. 2179, 95 L.Ed.2d 835 (1987) (salary of a full-time employee of a registered farm labor contractor constituted a "fee" for purposes of the Farm Labor Contractor Registration Act, predecessor to the AWPA); *Castillo v. Givens,* 704 F.2d 181, 196–97 (5th Cir.), *cert. denied,* 464 U.S. 850, 104 S.Ct. 160, 78 L.Ed.2d 147 (1983) (hourly wage paid to crew leader who chopped cotton but also furnished defendant with a crew constituted a "fee" within the meaning of the Farm Labor Contractor Registration Act, even if wage were viewed as compensation for chopping only; chopping job existed by virtue of his furnishing a crew for the defendant). These cases differ significantly, however, from the present case. In *Montelongo,* the employee in question was the company's "principal farm worker recruiter," whose job it was to recruit farm workers and hire crew leaders. In *Castillo,* the employee's field job existed only by virtue of his furnishing a crew to the defendant employer. In both cases, the employee's salary was closely tied to recruiting activities. This case does not present similar circumstances.

the AWPA, the key question, given the legislative history and case authority dealing with this exemption, is whether Soto is a permanent, full-time employee of fixed situs employers or a migratory crew leader.[10] Based on the factual record before the Court, the Court concludes as a matter of law that Soto is the former rather than the latter. First, Soto is clearly an employee of Baker and Dobbins in the sense that he provides services for a wage.[11] Soto's relationship to the third grower is less clear but is irrelevant to this Court's analysis since none of the plaintiffs worked for Martin. Second, Soto has worked for Anne Baker since August of 1990 and plans to continue working for her. *See* Soto Affid. (docket no. 57) at 2. He and his family live in a house on Baker's property. *Id.* Although Soto transports Baker's "surplus" workers to two other farms in the area, this is not the type of migratory movement that the statute seeks to cover. Soto himself has a fixed place of residence on Baker's farm which is close to Dobbins' farm. Under these circumstances, Soto is permanently located, tied to a farm, and thus easily found and held accountable. *See Mendoza*, 783 F.2d at 944. Accordingly, the Court concludes that Soto is exempt from the registration requirements of the AWPA as an "employee" of agricultural employers.

Whether Soto is also exempt from state licensing requirements is less clear. The language in the FLCA exemption is more specific than that in the AWPA. The FLCA exempts persons who perform farm labor contracting services "only within the scope of his or her regular employment for *one* agricultural employer on whose behalf he or she is so acting." RCW 19.30.010(6) (emphasis added). Plaintiffs argue that Soto is not exempt because he performs farm labor contracting activities for at least two agricultural employers (Baker and Dobbins).

■ The Court concludes that Soto is exempt from the licensing requirements of the FLCA. Washington courts often look to federal case law for guidance in construing a state law that substantially parallels a federal law. *See, e.g., Grimwood v. University of Puget Sound, Inc.*, 110 Wash.2d 355, 361–62, 753 P.2d 517 (1988) (court looked to federal cases construing the Age Discrimination in Employment Act of 1967). Here, the AWPA licensing provisions and the state's farm labor contracting provisions are similar in scope and purpose. Thus, the Court's analysis of Soto's status under the AWPA and federal case law also applies to Soto's status under the FLCA.

In conclusion, Soto is exempt from the farm labor contractor registration provisions of the AWPA and FLCA as a dual employee of Baker and Dobbins. Accordingly, the Court grants summary judgment in favor of defendant Soto on plaintiffs' claim that Soto violated the farm labor contractor registration requirements under federal and state law. The Court also grants summary judgment in favor of defendants Baker and Dobbins on plaintiffs' claims that they used an

---

**10.** The Court rejects plaintiffs' argument that the use of the term *"an* employee of *an* agricultural employer" means that the statute excludes only employees of *one* agricultural employer. The regulations recognize that "joint employment relationships are common in agriculture." 29 CFR § 500.20(h)(4). The regulations define "joint employment" as "a condition in which a single individual stands in the relation of an employee to two or more persons at the same time." *Id.* Neither the statute nor the regulations provide or suggest that employees in joint employment relationships should be treated differently from employees in single employer arrangements for purposes of the farm labor contractor registration requirements.

**11.** The AWPA adopts the definitions of "employ," "employer" and "employee" in the Fair Labor Standards Act. *See* 29 U.S.C. § 1802(5), 29 CFR

500.20(h)(1), (2) and (3). As so defined, "employ" means to suffer or permit to work; "employer" means any person acting directly or indirectly in the interest of an employer in relation to an employee; and "employee" means any individual employed by an employer. The regulations under the AWPA also recognize that joint employment relationships are common in agriculture, noting that whether a joint employment situation exists depends upon all the facts in a particular case. 29 CFR 500.20(i). If the facts establish that two or more persons are *"completely disassociated* with respect to the employment of a particular individual," a joint employment situation does not exist. *Id.* Since the undisputed facts in this case show, among other things, a close cooperative relationship between Baker and Dobbins with respect to the employment of Soto, there is clearly a joint employment relationship.

unlicensed farm labor contractor in violation of the AWPA and FLCA.

## IV. DID DEFENDANTS VIOLATE THE DISCLOSURE REQUIREMENTS OF THE AWPA § 1821(a) AND FLCA?

The AWPA requires each farm labor contractor and agricultural employer "which recruits any migrant agricultural worker" to "ascertain and disclose in writing to each such worker who is recruited for employment" certain information "at the time of the worker's recruitment." 29 U.S.C. § 1821(a). Such information includes, among other things, the place of employment, the wage rates to be paid, the crops and kinds of activities on which the worker may be employed, the period of employment, and the transportation, housing and any other benefit to be provided and the costs of each of them.

■ The FLCA imposes similar disclosure obligations. RCW 19.30.110(7). By its terms, however, the FLCA disclosure requirements apply only to farm labor contractors. Since the Court has concluded that Soto is not a farm labor contractor within the meaning of the state statute, the state disclosure obligations do not apply. Accordingly, summary judgment in favor of Soto on the issue of disclosure under the state act is proper.

### A. Are Plaintiffs "Migrant" Workers within the Meaning of the AWPA?

■ The AWPA defines a "migrant agricultural worker" as "an individual who is employed in agricultural employment of a seasonal or other temporary nature, and who is required to be absent overnight from his permanent place of residence." 29 U.S.C. § 1802(8)(A). "Permanent place of residence" is defined as:

a domicile or permanent home. Permanent place of residence does not include seasonal or temporary housing such as a labor camp. The term *permanent place of residence* for any nonimmigrant alien is that individual's country of origin.

29 CFR 500.20(p)(2) (emphasis in original). Under established case law, workers who cannot commute from their permanent homes to a farm where they work are "migrants." *Avalos v. La Conca D'Oro, Inc.,* 111 Lab.Cas. (CCH) ¶ 35,188, 1988 WL 137302 (E.D.Pa.1988) (labor camps are not permanent places of residence; undocumented farmworkers were considered permanent residents of Mexico in accordance with regulations); *Rodriguez v. Jackson,* 110 Lab.Cas. (CCH) ¶ 35,137, 1988 WL 150697 (D.Ariz.1987).

The plaintiffs here are migrant agricultural workers who are entitled to the protections of the AWPA. All defendants permanently reside in California or Mexico. Since they cannot commute from their permanent place of residence to the defendants' farms, they are "migrants" under the Act.

### B. Were Plaintiffs "Recruited" by Defendants?

■ The term "recruit" is not defined in the Act or implementing regulations. However, the House Report noted that the "activity envisioned ... runs the spectrum from the actual pre-employment discussion between the recruiter ... and the worker to the filing of job orders with the interstate recruitment system." 1982 U.S.Code Cong. & Admin.News at 4547, 4559. Courts have held that the definition of "recruit" should be broad enough to encompass indirect recruitment: "It is reasonable to expect that when a farm spreads the word that work is available other workers not directly contacted will hear of the work and approach the farm." *Rodriguez,* 110 Lab Cas. (CCH) ¶ 35,137, at p. 45,925. Recruitment also includes "pre-employment discussions." *Id.; Contreras v. Mt. Adams Orchard Corp.,* 744 F.Supp. 1007 (E.D.Wash.1990) ("recruit" and its derivatives means "to hire or otherwise obtain or secure the services of," and includes all pre-employment discussions that relate to a worker's employment).

In this case, the undisputed facts show that Baker authorized Roberto Soto to obtain workers for her. Roberto Soto then called Garcia and enlisted his help in obtaining workers. Baker did not know that Roberto Soto would ask Garcia for help. Garcia then advertised the position and approached several plaintiffs about the job at Baker's farm.

Garcia called Baker to advise her that he had several workers who were interested in the job. Baker told Garcia that she would send Hipolito Soto to Oregon to pick up the workers and she proceeded to do that. Hipolito Soto met with the workers at Garcia's house and discussed certain aspects of the job with them. Soto then took several of the plaintiffs to Baker's farm.

These facts support a finding that Baker "recruited" the plaintiffs who were transported by Hipolito Soto from Oregon to Baker's farm in Washington.[12] First, Baker's claim that she did not know that Roberto Soto would involve Garcia in the process does not require the Court to find that Garcia did not act on Baker's behalf. Baker instructed Roberto Soto to get some workers. She did not limit his authority to accomplish that task in any way. She did not later object to Garcia's involvement when she learned of it and in fact had conversations with Garcia which furthered the hiring process. Finally, she accepted the benefit of Garcia's recruiting efforts by hiring the workers he found. *See Bueno v. Mattner*, 829 F.2d 1380, 1384 (6th Cir.1987), *cert. denied*, 486 U.S. 1022, 108 S.Ct. 1994, 100 L.Ed.2d 226 (1988) (defendants could not escape liability under the AWPA by arguing that they had never explicitly authorized others to perform farm labor contracting activities on their behalf when they accepted the benefit of migrant labor brought to their farm through the efforts of other workers). Moreover, Hipolito Soto, upon arriving in Oregon, had pre-employment discussions with the workers considering the position at Baker's farm. While the content of those discussions is in dispute, it is agreed that some matters concerning the terms and conditions of employment at Baker's farm were discussed. This fact alone is sufficient to find that recruiting of the workers took place. In any case, viewing the factual circumstances in their entirety, it is clear that "recruitment," as defined by the courts, occurred in this case.

Plaintiff Romero presents different factual circumstances because he met Hipolito Soto in English class in Woodland, Washington (within 25 miles of Baker's farm), discussed work at Baker's farm with Soto, and then showed up at the farm looking for work. Under *Rodriguez*, 110 Lab Cas. (CCH) ¶ 35,137, at p. 45,925, "recruitment" includes "indirect recruitment." Indirect recruitment encompasses situations where the farm "puts out the word" that work is available and workers respond by showing up at the farm to work. This may be such a case. However, there is a material issue of fact concerning the substance of a conversation Soto had with Romero in English class. This factual dispute precludes summary judgment on the issue of Baker's disclosure with respect to Romero.

There is also a factual dispute concerning whether plaintiffs Idilio Flores Quintana and Carlos Mariscal were recruited by Soto to work on Baker's farm. Accordingly, summary judgment with respect to these plaintiffs' claims that Baker's disclosure was inadequate is also inappropriate.

### C. Did Defendant Dobbins Recruit the Plaintiffs?

Dobbins states in his affidavit that he does not share a work force of laborers with Baker, and he has not authorized Hipolito Soto to recruit, solicit, transport, or furnish laborers for him. *See* Dobbins Affid. at 2 (docket no. 55). Dobbins merely states that on occasion, Anne Baker had a surplus of workers, which he hired on a day-to-day basis. *Id.* Dobbins states that his usual practice was to call Baker when he needed workers to see if she had workers she was not using. If she did, Dobbins would drive them to his farm to work. *Id.* at 3.

The Court finds that Dobbins recruited the workers that he obtained from Baker's

12. This includes plaintiff Margarito Lopez Perez, who Soto picked up "on the way out of town." *See* Soto Affid. at 4. Soto claims that he never conveyed any information concerning Baker's farm to Perez directly "because his friends told him what I had said to them." *Id.* The fact that Soto did not have pre-employment discussions

directly with Soto, but rather the substance of those conversations was conveyed through other workers, does not alter the Court's analysis. The definition of "recruit" is broad enough to encompass indirect recruitment, and includes "spreading the word" about available work. *Rodriguez*, 110 Lab Cas. (CCH) ¶ 35,137, at p. 45,925.

farm.[13] "Recruit" and its derivatives means "to hire or otherwise obtain or secure the services of." *Contreras,* 744 F.Supp. at 1007. "Recruiting" encompasses not only direct contacts with prospective workers but also indirect efforts to attract or solicit workers for agricultural employment. *Rodriguez,* 110 Lab Cas. ¶ 35,137, at p. 45,925. It is undisputed that Dobbins called Baker and asked her for surplus workers. It is also undisputed that as a result of that phone call, Soto selected and transported workers to Dobbins' farm. Under these factual circumstances, Dobbins' activities constitute recruitment. Dobbins, in a sense, "put out the word" that work was available. Such activities have been held to be "recruitment" for purposes of triggering disclosure obligations under the AWPA. The only practical difference between this case and indirect recruiting cases where the employer "puts out the word" that work is available is that plaintiffs did not voluntarily respond to Dobbins' call for workers. They did not choose to work for Dobbins; rather, Soto made the choice for them. It would be illogical for this Court to find that the issue of whether recruitment has occurred turns on the voluntary or involuntary nature of the workers' response to the employer's call for laborers. If anything, the failure of the employer to provide workers with a choice presents a more compelling case for imposing disclosure obligations on the employer. Thus, the Court finds that Dobbins recruited the workers he obtained from Baker's pool of laborers.

### D. *Was Disclosure of Terms of Employment under 29 U.S.C. § 1821(a) Adequate?*

Defendant Baker claims that she posted a poster in her barracks disclosing the terms of employment at her farm prior to the plaintiffs' first day of work. *See* Baker Affid. at 4 (docket no. 54); Exhibit 9, Plaintiffs' Exhibits. Defendant Baker did not provide any in-hand written disclosures to the plaintiffs. Dobbins provided disclosure to the plaintiffs by handing them a form disclosure statement at the time the workers filled out their employment forms. *See* Exhibit 3, Plaintiffs' Exhibits.

#### 1. Baker's Disclosure

■ The Court concludes that Baker violated § 1821(a) because she did not provide all of the information required. Baker's notice (Exhibit 9, Plaintiffs' Exhibits) merely states that work begins in June and terminates in September, workers must have proper papers to work, workers are paid once a week, workers must earn at least the ($4.25) minimum by contract to keep their jobs, and workers must give three days notice if they decide to quit. The disclosure fails to specify the wage rates to be paid, the crops to be picked, or the costs of housing or other employee benefits (which would include food). All of these terms must be disclosed under § 1821(a). Similarly, Baker's disclosure does not provide the information required to be disclosed on the Department of Labor's worker disclosure form.

#### 2. Dobbins' Disclosure

■ The adequacy of Dobbins' disclosure turns on whether Dobbins should have disclosed on the form his rule that workers must pick the minimum wage rate in order to keep their jobs. The disclosure form provided by Dobbins does not permit the worker to determine the rate to be paid per pound. The form specifies an hourly wage but the worker is not paid by the hour alone. The disclosure form merely provides that workers would be paid $4.25 per hour. The piece rate per pound is listed as "?". Dobbins testified that he advised the workers orally of the minimum wage rule. *See* Dobbins Depo., Plaintiffs' Exhibits, at 17, 22. The issue raised by these facts is whether § 1821(a) requires written disclosure of this particular term of employment, or whether oral disclosure is sufficient.

Since Dobbins' wage rule was a material term of plaintiffs' employment which significantly affected the farmworkers' employment, and because the piece rate was extremely important in light of this rule and affected the ability of the workers to earn a wage, the Court concludes that Dobbins' oral

---

**13.** According to plaintiffs' answers to interrogatories and defendant Dobbins' payroll records, all of the plaintiffs were recruited from Baker's farm to work on Dobbins' farm.

disclosure was inadequate. Full disclosure of the wage terms should have been made *in writing*, as required by § 1821(a) and § 1821(g). *See De La Fuente*, 713 F.2d at 237 (failure to disclose in writing dockage policy, which had a significant impact on workers' pay, violated AWPA's requirement to disclose wage rates).

In conclusion, all plaintiffs were migrant agricultural workers entitled to disclosure under § 1821(a) "upon recruitment." All plaintiffs, except perhaps Romero, Quintana and Mariscal, were "recruited" by Baker and therefore should have been provided a copy of the written disclosure of the terms of employment described in the statute. In addition, the disclosure provided by Baker failed to provide adequate disclosure of all of the terms listed and therefore violated § 1821(a). The Court also concludes that Dobbins violated § 1821(a) by failing to adequately disclose the minimum wage rule to the workers he obtained from Baker's farm.

█ With respect to disclosure requirements under the FLCA, the FLCA imposes such requirements only upon farm labor contractors. Since the Court concluded that Soto is exempt as an employee of an agricultural employer, he is not liable for failure to provide "on a form prescribed by the director" the information described in RCW 19.30.110(7). Accordingly, summary judgment in favor of defendant Soto on the issue of disclosure under RCW 19.30.110(7) is proper. Similarly, since Soto is exempt from farm labor contractor status under the AWPA, he cannot be liable under § 1843 for failure to furnish the workers with a written statement of the conditions of employment.

## V. DID DEFENDANTS VIOLATE THE DISCLOSURE REQUIREMENT OF AWPA § 1821(b)?

█ Section 1821(b) provides that each farm labor contractor and agricultural employer post in a conspicuous place at the place of employment a poster provided by the Secretary setting forth the rights and protections afforded the workers. 29 U.S.C. § 1821(b). Defendant Baker claims that she posted such a poster in the main room of her barracks. Plaintiffs have submitted testimony to the effect that no poster was posted in the barracks until after the paralegal visited the farm. This is a genuine issue of material fact that precludes summary judgment.

Defendant Dobbins states that he has the AWPA poster posted in the workers' bathrooms, shower facilities, housing, and the bus that transports the workers. *See* Dobbins Affid. at ¶ 12, p. 5 (docket no. 55). Only one plaintiff recalls seeing the poster and that was after the paralegal visited the workers. *See* Cedillo–Sanchez Decl. at ¶ 10, Plaintiffs' Supp. Exhibits. The Court concludes that there is a material issue of fact which must be resolved at trial.

## VI. DID DEFENDANT BAKER VIOLATE § 1823(b) BY FAILING TO LICENSE HER LABOR CAMP?

█ Section 203(b) of the AWPA provides in pertinent part that:

> (1) ... no facility or real property may be occupied by any migrant agricultural worker unless either a State or local health authority or other appropriate agency has certified that the facility or property meets applicable [federal and state] safety and health standards. No person who owns or controls any such facility or property shall permit it to be occupied by any migrant agricultural worker unless a copy of the certification of occupancy is posted at the site.

29 U.S.C. § 1823(b)(1). Permits certified by local agencies in compliance with local standards do not satisfy the AWPA requirement. *Howard v. Malcolm*, 658 F.Supp. 423, 433–34 (E.D.N.C.1987) (summary judgment issued against defendant for failure to obtain an occupation permit for his labor camp from an agency certifying compliance with both federal and state substantive safety and health standards), *further opinion on other issues*, 852 F.2d 101 (4th Cir.1988).

█ It is undisputed that defendant Baker did not have a labor camp certificate during June and July 1991, when the plaintiffs lived at the camp. In fact, Baker did not obtain such a certification until September 16, 1991, after the plaintiffs had left the farm. Defendants' Summary Judgment

Memorandum (docket no. 52) at 39. Baker contends, however, that she obtained an occupancy permit, a permit for on-site sewage system, a permit for the water system, and an inspection for the fire alarm. *Id.* at 38. During oral argument, her counsel argued that as long as Baker's labor camp met the "applicable safety and health standards" and as long as the workers were not damaged by the lack of certification, Baker did not violate § 1823(b).

The Court finds that there is no genuine issue of fact that defendant Baker did not comply with the certification requirement during the period at issue. Her compliance with local standards does not satisfy the AWPA requirement. *Howard* 658 F.Supp. at 433–4. The Court grants plaintiffs' summary judgment motion on this issue.

## VII. IS DEFENDANT BAKER ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS THAT SHE VIOLATED THE RECORD-KEEPING REQUIREMENTS UNDER § 1821(d)?

■ In their complaint, the plaintiffs allege that defendant Baker violated 29 U.S.C. § 1821(d) which requires that an agricultural employer provide migrant farm workers with a record of the itemized deductions withheld from their paychecks. The plaintiffs contend that Baker failed to itemize the amount deducted for the food she had bought for the plaintiffs while they were working on her farm. According to the plaintiffs, she held their paychecks as ransom until they paid for their food. Cedillo–Sanchez Decl. ¶ 16; Mariscal Decl. ¶ 7; Romero Decl. ¶ 4; Soto Decl. ¶ 7; Barajas Decl. ¶ 7; attached to Plaintiffs' Reply Brief (docket no. 68).

Baker claims that she provided all the necessary recordkeeping and itemization required under § 1821(d) and seeks summary judgment as to this issue. She argues that the money for food does not constitute an amount "withheld" from the plaintiffs' paychecks because the plaintiffs were paid in full and were asked to pay for the food only *after* they had received their paychecks. Defendants' Reply Brief (docket no. 76) at 10.

It is undisputed that at the time she issued their paychecks, Baker asked for a reimbursement for the food she had purchased for the plaintiffs. The issue is whether the money for food constitutes a "sum withheld" within the meaning of § 1821(d).

One of the purposes of the statute is to prevent the exploitation of migrant farm workers' labor by farm labor contractors or agricultural employers, who deduct from their pay exorbitant amounts of money for daily necessities such as housing, food, and electricity but who refuse to account for the exact amount charged or consumed. H.Rep. No. 885, 97th Cong., 2d Sess. 3 (1982), 1982 U.S.Code Cong. & Admin.News at 4548–9. To make a technical distinction between money deducted *before* paychecks are issued and money requested *after* paychecks are issued is to disregard the purpose of the AWPA. The Court, therefore, finds as a matter of law that defendant Baker's request for reimbursement for the food constitutes a "sum withheld," which is required to be itemized, and grants summary judgment in the plaintiffs' favor on this issue.

## VIII. IS DEFENDANT BAKER ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CLAIM THAT SHE MADE ILLEGAL WAGE DEDUCTIONS IN VIOLATION OF RCW 49.-48.010?

■ Defendant Baker asserts three grounds in support of summary judgment with respect to the claim of illegal wage deductions in violation of RCW 49.48.010. She alleges that (1) the food deduction is specifically authorized by RCW 49.48.010(2) because plaintiffs and Baker agreed to the deduction; (2) the cash reimbursements after the plaintiffs were paid are not deductions; and (3) RCW 49.48.010 is not applicable here because it applies only to withholdings from final paychecks issued *after the employee ceases working.* Defendants' Summary Judgment Memorandum (docket no. 52) at 45.

The Court finds that while the first argument turns on a factual dispute and the second argument is without merit, summary

judgment is appropriate based on Baker's third argument.

RCW 49.48.010 provides:

> When any employee shall cease to work for an employer, whether by discharge or by voluntary withdrawal, the wages due him on account of his employment shall be paid to him at the end of the established pay period: ...
>
> \* \* \* \* \* \*
>
> It shall be unlawful for any employer to withhold or divert any portion of an employee's wages unless the deduction is:
>
> (1) required by state or federal law; or
>
> (2) specifically agreed upon orally or in writing by the employee and employer; ...
>
> \* \* \* \* \* \*

RCW 49.48.010.

The plaintiffs argue that the first and second paragraphs of the statute should be read separately and that the second paragraph applies to payments at the end of any pay period. However, they cite no cases that would support this reading of the statute.

The Court concludes that RCW 49.48.010 applies only to deductions at the end of the final pay period after the employee ceases working. *See Cameron v. Neon Sky, Inc.* 41 Wash.App. 219, 703 P.2d 315 (1985), *rev. denied,* 104 Wash.2d 1026 (1985) (employers violated statute when they attempted to recover a debt by withholding money from the final paycheck of employee, who had ceased working for them, to satisfy the debt); and *State v. Chehalis Furniture & Mfg. Co.,* 47 Wash. 378, 92 P. 277 (1907) (payment by check or due bill and refusal to pay same on demand did not violate this statute where it did not appear that laborer had ceased to work). Accordingly, plaintiffs cannot recover under this statute and summary judgment dismissing this claim is appropriate.

## IX. INTENT

The Court concludes that the issue of whether defendants "intentionally violated" any provision of the AWPA, within the meaning of 29 U.S.C. § 1854(c), is a question of fact to be resolved at trial.

## X. PRETRIAL STATUS CONFERENCE

The Court reschedules the pretrial status conference for March 16, 1993 at 4:00 p.m. Counsel should be prepared to discuss the issues remaining for trial and provide the Court with an estimate of the time necessary for the trial of remaining claims.

IT IS SO ORDERED.