[No. 49719-7-I.  Division One.  May 5, 2003.]

FREDERICK J. BROWN, *Respondent*, v. THE CITY OF SEATTLE, *Appellant*.

*Thomas A. Carr, City Attorney*, and *Eleanore S. Baxendale, Assistant*, for appellant.

*Jeffrey M. Eustis*, for respondent.

SCHINDLER, J. — This appeal concerns the city of Seattle's (the City's) authority to regulate vessels under the land use code in effect when it issued a notice of violation (NOV) in this case. Brown, the respondent, owns and operates a tugboat called the M/V *Challenger*. Aboard the boat, Brown runs a bed and breakfast. The City issued an NOV to Brown on the grounds that his use of the vessel as lodging violated the shoreline regulations of the City's land use code. Brown filed a lawsuit under the Land Use Petition Act (LUPA), chapter 36.70C RCW, challenging the City's authority to issue the NOV because the *Challenger* was exempt from regulation under the City's code. Brown also asserted that this code provision was void for vagueness and the City violated his rights to procedural and substantive due process. The trial court agreed that Brown's use of his vessel was exempt from regulation and the City did not have the authority to issue the NOV. The trial court dismissed Brown's other claims. The City appeals and Brown cross-appeals. Because the City's shoreline regulations in effect at the time explicitly exempted navigable vessels, the City

was without authority to regulate the *Challenger*, and we affirm the court's decision to vacate the NOV. We affirm the trial court's dismissal of Brown's constitutional claims and its decision to award costs to Brown under RCW 4.84.030.

## FACTS

The M/V *Challenger* is a 96-foot World War II era tugboat. It is a documented vessel that has served as an active tugboat along the west coast of North America. Frederick ("Jerry") Brown purchased the *Challenger* in 1985 and began running a bed and breakfast aboard the vessel. The *Challenger* is primarily moored at a marina on Lake Union, but as a part of the bed and breakfast operation, Brown offers tours of Lake Union and Lake Washington to his guests aboard the *Challenger*. The vessel has also participated in maritime events such as Seafair, tugboat races, and holiday cruises.

In 1990, the city of Seattle's Department of Construction and Land Use (DCLU) investigated whether Brown's use of his vessel as a bed and breakfast violated the City's shoreline regulations. DCLU concluded that because the *Challenger* was a navigable vessel, its use as a bed and breakfast was not regulated under the City's shoreline regulations. The investigator's notes state: "MV Challenger is considered vessel: B & B is ok."[1] The notes conclude: "No Violation. An inspection was conducted and no violations were, or could be, observed and noted."[2]

DCLU's 1990 decision that Brown's bed and breakfast was not a violation of the City's shoreline regulations was based on an exemption contained in the Seattle Municipal Code (SMC), SMC 23.60.018, which states, in part:

---

[1] Clerk's Papers (CP) at 326.

[2] CP at 326.

**Nonregulated actions.**

Except as specifically provided otherwise, the regulations of this chapter shall not apply to the operation of boats, ships and other vessels designed and used for navigation . . . .

DCLU's interpretation of SMC 23.60.018 in 1990 was consistent with its earlier interpretation. In Director's Rule 27-88, issued in 1988, on the subject of "exemptions from the Shoreline Management Program Permit Require-ments,"[3] DCLU states:

The use of boats, ships and other vessels designed for naviga-tion shall be exempt from the provisions of the Shoreline Master Program and from the need to obtain a substantial development permit.[4]

DCLU further explains:

Generally, the operation of boats, ships, and other vessels designed and used for navigation are "non-regulated actions" which do not require a development permit (Section 23.60.018). A vessel or overwater facility whose use is exclusively on water and does not require that it be attached to the ground does not fall under the general regulation of the Land Use Code, Building Code, or Electrical Code.[5]

In 1992, the *Challenger* moved to its current moorage at the Yale Street Marina, located on the south end of Lake Union, where Brown negotiated a long-term lease.[6] After mooring at this marina, Brown made substantial improve-ments in the vessel, including establishing connections to the city water line and sewer system.

Under the City's shoreline regulations, the Yale Street Marina is located in an area designated as an Urban Stable zone, which is the designation for most of the shoreline of Lake Union. Within areas with this designation, certain

---

[3] CP at 822.

[4] CP at 824.

[5] CP at 824.

[6] There is a factual dispute about whether the marina is classified as a commercial or recreational marina. The marina's permit is not in the record, and the distinction is immaterial because the category of marina does not affect the interpretation of SMC 23.60.018.

uses are permitted, others are prohibited, and others are conditionally permitted. Permitted uses include residences above commercial businesses, marinas, and marine retail sales and services. SMC 23.60.600. "Prohibited uses on waterfront lots" in the Urban Stable designation include lodging, medical and animal services, automotive repair and sales, and mortuary services. SMC 23.60.606.

In 1997, in conjunction with Brown's decision to sell the *Challenger*, he obtained a legal opinion from James Fearn, the former head of the land use division of the City of Seattle's Attorney's Office, regarding the legality of his bed and breakfast business at the Yale Street Marina. Fearn concluded that the "zoning and shoreline regulations for the property are, at least at present, irrelevant to the MV Challenger's bed and breakfast operation" and that the use of the vessel for lodging was "unregulated."[7] Fearn's letter states:

> The Zoning and Shoreline codes prohibit any use of property without a permit or approval from the City (SCM Sections 23.60.016 and 23.90.002). Vessels designed and used for navigation however, are exempt from Shoreline regulations (see SMC 23.60.018). MV Challenger is clearly designed for navigation. The expression "used for navigation" is not defined in the Code, but we can assume that at a minimum it means that vessels must sometimes be used for travel over water.[8]

In June 1999, Brown entered into an agreement with R&K Marine, L.L.C. (R&K) to sell the *Challenger* for $800,000. The agreement included a sublease for moorage at the Yale Street Marina.

On August 4, 1999, DCLU issued an NOV on the ground that commercial use of the *Challenger* for lodging purposes while moored at the Yale Street Marina violated the City's land use code. However, DCLU released the NOV because it was issued to Brown after the vessel had changed hands. On October 27, 1999, DCLU issued an NOV to R&K. As a

---

[7] CP at 438.

[8] CP at 438.

result of this action, R&K filed an action against Brown for breach of contract, negligent misrepresentation and rescission of the sale. The following month, in April 2000, R&K reconveyed title of the vessel to Brown and assigned its claims against the City to Brown.

Brown filed his initial complaint against the City based on the NOV issued to R&K on October 27, 1999, but after DCLU released the NOV when the vessel was reconveyed, the trial court dismissed Brown's complaint as moot. DCLU issued another NOV to Brown on October 9, 2000. Brown requested a director's review, and on January 12, 2000 a director's review meeting took place. The shoreline inspector, Brown and the principals of R&K testified. On January 11, 2001, DCLU issued an "Amended Land Use Order of the Director Following Reconsideration of Notice of Violation."[9] In this order, the review officer concluded that the *Challenger* was designed for and, at least for limited periods, used for navigation. Although the vessel was exempt from shoreline regulations while being used for navigation, the review officer also concluded that the *Challenger* was not exempt from the City's regulations while moored. Because the activities took place while the vessel was moored, the NOV was sustained.

Brown then filed an amended complaint under LUPA and for damages. In his amended complaint, he asserted that the *Challenger*, as a vessel designed and used for navigation, was exempt from shoreline regulations, and that furnishing accommodations and meals aboard the *Challenger* did not meet the definition of "lodging" under the land use code.[10] He argued that if the vessel was not exempt from the City's shoreline regulations, SMC 23.60.018 was void for vagueness. Brown also alleged that

[9] CP at 86.

[10] CP at 77-78.

the City's enforcement action violated his right to procedural and substantive due process.[11]

The trial court held a LUPA hearing on October 29, 2001 and ruled that the use of Brown's vessel was not subject to the shoreline regulations because the City's land use code specifically exempted vessels designed and used for navigation. The court stated: "if the City means and wants to have a 'primarily-used-for-navigation rule,' they need to say that . . . if the City wants to regulate what is happening on a ship or a vessel that is moored, then it needs to say so specifically. It doesn't do that here."[12] Based on the language of the code exemption, the court concluded that "the use that is regulated is the moorage of the commercial vessels and not the use of what is happening on board."[13] The trial court also indicated that if the provision did not exempt the use of the vessel, the provision would be void for vagueness because in that case it would not provide adequate notice of what is the proscribed behavior. But because DCLU did not have authority under its exemption to regulate the use of the *Challenger*, it did not need to reach the vagueness issue. Brown, as the prevailing party, was awarded statutory attorney fees and costs. The court also concluded that the City's actions were not arbitrary and capricious, and dismissed Brown's procedural and substantive due process claims.

On December 7, 2001, the court entered a judgment and order vacating the NOV issued on October 9, 2000.[14] The City appeals and Brown cross-appeals.

## VESSEL EXEMPTION

The Shoreline Management Act of 1971 (SMA), chapter 90.58 RCW, was enacted to protect and manage the shore-

[11] Brown also asserted R&K's assigned claims which he later voluntarily dismissed. CP at 89.

[12] Report of Proceedings (RP) (Oct. 29, 2001) at 69-70.

[13] RP (Oct. 29, 2001) at 69.

[14] CP at 537.

lines of Washington State to foster all reasonable and appropriate uses, while protecting against adverse impacts to public health, land, vegetation, wildlife, and the rights of navigation. RCW 90.58.020. The SMA creates a cooperative system between local and state governments and requires local governments to develop master programs for the regulation and use of their shorelines. RCW 90.58.080. A master program is a "comprehensive use plan for a described area, and the use regulations together with maps, diagrams, charts, or other descriptive material and text, a statement of desired goals, and standards developed in accordance with the policies enunciated in RCW 90.58.020." RCW 90.58.030(3)(b). Once approved, the master programs "constitute [the] use regulations for the various shorelines of the state." RCW 90.58.100(1). The city of Seattle has adopted a master program, the Shoreline Management Program (SMP), which is codified in its land use code, chapter 23.60 SMC.

The issue is whether under the City's SMP, it has the authority to require permits for uses that occur aboard vessels "designed and used for navigation." SMC 23.60.018. Brown argues, and the trial court agreed, that because SMC 23.60.018 states that the regulations of the SMP do not apply to the "operation" of boats "designed and used for navigation," the *Challenger* is exempt from the requirement of obtaining a permit to operate its bed and breakfast, and the City had no authority to regulate the use of the *Challenger*.

■ Brown filed his appeal to superior court under LUPA which provides the "exclusive means of judicial review" of land use decisions. RCW 36.70C.030.[15] The appellate court

---

[15] LUPA authorizes the superior court to reverse a land use decision if the party seeking relief shows that:

(a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;

(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;

"stand[s] in the shoes of the superior court" when reviewing the underlying administrative decision. *Wells v. Whatcom County Water Dist. No. 1*, 105 Wn. App. 143, 150, 19 P.3d 453 (2001). Under LUPA, a reviewing court may grant relief under any or all of the six grounds set forth in RCW 36.70C.130(1). Issues of law are reviewed de novo. *City of Univ. Place v. McGuire*, 144 Wn.2d 640, 647, 30 P.3d 453 (2001); *Sunderland Family Treatment Servs. v. City of Pasco*, 107 Wn. App. 109, 117, 26 P.3d 955 (2001); *Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 627, 869 P.2d 1034 (1994).

In its appeal, the City contends that it had authority to issue the NOV to Brown because SMC 23.60.018 does not exempt vessels from the code's use permit requirements. The City agrees that the *Challenger* is a vessel designed and used for navigation, but argues that vessels are exempt from use permit requirements only when engaged in "navigation operations."[16] According to the City, the exemption does not apply to vessels when they are moored.

■ The City urges this court to defer to its interpretation of the code because it argues judicial deference should be given to the construction of an ordinance by the agency charged with its enforcement. *See Citizens for a Safe Neighborhood v. City of Seattle*, 67 Wn. App. 436, 440, 836 P.2d 235 (1992). But this rule of statutory construction applies only when the law being interpreted is ambiguous, and even then, the agency's interpretation is not "absolutely controlling" on the court. *Hama Hama Co. v. Shorelines Hearings Bd.*, 85 Wn.2d 441, 448, 536 P.2d 157 (1975).

---

(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;

(d) The land use decision is a clearly erroneous application of the law to the facts;

(e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or

(f) The land use decision violates the constitutional rights of the party seeking relief.

RCW 36.70C.130(1).

[16] Br. of Appellant at 37.

This court does not defer to an interpretation which conflicts with the language of the law. *Waste Mgmt. of Seattle*, 123 Wn.2d at 628. It is ultimately for the court to determine the purpose and meaning of the law. *Overton v. Econ. Assistance Auth.*, 96 Wn.2d 552, 555, 637 P.2d 652 (1981); *Waste Mgmt. of Seattle*, 123 Wn.2d at 627; *Franklin County Sheriff's Office v. Sellers*, 97 Wn.2d 317, 325-26, 646 P.2d 113 (1982). The City's interpretation is not entitled to deference here because the specific language of SMC 23.60.018 is not ambiguous.

▮▮ The City's interpretation that the vessel exemption does not apply to moored vessels interjects a distinction that is not in the code provision. The provision exempts the "operation of boats designed and used for navigation" and does not distinguish between vessels tied to a dock and those moving over water.[17] Significantly, the City itself has interpreted the code provision as exempting the use of navigable vessels on at least the two occasions discussed above.

The City relies on the opening phrase of SMC 23.60.018: "[e]xcept as specifically provided otherwise," to argue that the code "specifically provides otherwise" because it authorizes the City to regulate all uses of the shoreline. SMC 23.40.002. The City also points to the provision preceding SMC 23.60.018 which states: "[n]o development shall be undertaken and no use shall be established in the Shoreline District unless the Director has determined that it is consistent with the policy of the Shoreline Management Act and the regulations of this chapter." SMC 23.60.016. The City cites other provisions of the SMA and the SMP which emphasize the importance of regulating uses of the shoreline. *See, e.g.*, RCW 90.58.210(1). But these are all general provisions. There is no provision in the SMP or SMA which evinces an intent to override the vessel exemption. Where there are both general and specific provisions that arguably

---

[17] The SMP contains no definition of operation. The common meaning of the term is broad, including "functioning" or "working." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1581 (1993).

apply, the specific governs over the general. *See Knowles v. Holly*, 82 Wn.2d 694, 702, 513 P.2d 18 (1973) ("where there is a conflict between one statutory provision which deals with the subject in a general way and another which deals with the same subject in a specific manner," the specific provision prevails.). The City cannot alter the meaning of the SMC 23.60.018 exemption by relying on general provisions of the SMA and SMC.

The City argues that the vessel exemption does not apply to the *Challenger* because it is using the shoreline not for moorage, but for lodging. The City also contends that allowing an exemption from permit requirements for Brown's lodging business is inconsistent with the fundamental objectives of the SMP and SMA: to regulate uses of the shoreline, and ensure that water-dependent uses take precedence over non-water-related uses. The purpose of the SMP is to:

> implement . . . the Shoreline Management Act . . . by regulating development of the shorelines of the City in order to:
>
> 1. Protect the ecosystems of the shoreline areas;
>
> 2. Encourage water-dependent uses;
>
> 3. Provide for maximum public use and enjoyment of the shorelines of the City; and
>
> 4. Preserve, enhance and increase views of the water and access to the water.

SMC 23.60.002(B).

The City claims that this statement of purpose is thwarted if nonwater-dependent uses, such as lodging, are permitted aboard vessels. We are not persuaded by this argument. The *Challenger* is using the shoreline for moorage, which is a "water-dependent" use.[18] SMC 23.60.944. The difference between the *Challenger* and other vessels is not the way it is using the land, but the activities occurring

---

[18] The City does not contend that the lodging on the M/V *Challenger* is inconsistent with any other purpose of the SMP such as providing public access to the waterfront, preservation of water views or protecting ecosystems.

on board which, because of the specific language of the code's exemption, cannot be regulated.

The City also argues that if the court does not construe the exemption as it urges, this interpretation will vitiate the shoreline regulations and the SMA. But in fact, the City has already amended the code to prevent that by requiring use permits for moored vessels.[19]

We agree with the trial court's interpretation of SMC 23.60.018 and its decision to vacate the NOV. The City's shoreline regulations and permitting requirements do not apply to the operation of vessels designed and used for navigation. The exemption contains no qualifications or exceptions and is not limited to vessels that are traveling over water. Brown's use of the *Challenger* for lodging is not a regulated use under the code in effect at the time of the issuance of the NOV.

## COST AWARD

The trial court awarded costs of $280.00 under RCW 4.84.030.[20] This statute provides, in relevant part: "[i]n any action in the superior court of Washington the prevailing party shall be entitled to his or her costs and disbursements." RCW 4.84.030.

The City argues that the trial court erred in awarding costs under RCW 4.84.030 because another provision which governs the award of costs for appeals of land use decisions, RCW 4.84.370, bars the award of costs at the trial court level.[21] RCW 4.84.370 allows an award of reasonable attor-

---

[19] In 2002 the City amended the code. The code now states that "no use, including a use that is located on a vessel" is allowable unless it is consistent with the SMP regulations. SMC 23.60.016. However, this code provision is not effective without the Department of Ecology's approval, which has not occurred.

[20] The trial court also awarded Brown costs of $363.36 for preparing the LUPA record under RCW 36.70C.110(4). The City does not contest this award.

[21] Below, the City also argued that Brown could not be considered the prevailing party for purposes of RCW 4.84.030. The City does not pursue this theory on appeal.

neys' fees and costs to a prevailing party in a land use matter:

> (1) Notwithstanding any other provisions of this chapter, reasonable attorneys' fees and costs shall be awarded to the prevailing party or substantially prevailing party on appeal before the court of appeals . . . of a decision by a county, city, or town to issue, condition, or deny a development permit involving a site-specific rezone, zoning, plat, conditional use, variance, shoreline permit, building permit, site plan, or similar land use approval or decision. The court shall award and determine the amount of reasonable attorneys' fees and costs under this section if:

> (a) The prevailing party on appeal was the prevailing or substantially prevailing party before the county, city, or town; . . . and

> (b) The prevailing party on appeal was the prevailing party or substantially prevailing party in all prior judicial proceedings.

> (2) In addition to the prevailing party under subsection (1) of this section, the county, city, or town whose decision is on appeal is considered a prevailing party if its decision is upheld at superior court and on appeal.

RCW 4.84.370.

█ Whether a statute authorizes costs is question of law subject to de novo review. *See Tradewell Group, Inc. v. Mavis*, 71 Wn. App. 120, 126, 857 P.2d 1053 (1993) (attorney fees).

█ The City relies on *Baker v. Tri-Mountain Resources, Inc.*, 94 Wn. App. 849, 973 P.2d 1078 (1999). In *Baker*, the court examined the legislative history of RCW 4.84.370 and concluded that the statute authorized an award of attorney fees incurred at the appellate court, but not at the trial court level. *Baker*, 94 Wn. App. at 854. The City argues that because the statute refers to fees and costs, this analysis applies to costs as well and the trial court erred in awarding costs.

But here the trial court explicitly relied on RCW 4.84.030, not RCW 4.84.370, as the basis for awarding costs.[22] Even though the trial court did not rely on RCW 4.84.370, the City contends that the existence of this statute bars a prevailing party from receiving an award of costs at the trial court level under RCW 4.84.030. The City asserts that because the introductory language of RCW 4.84.370 says "[n]otwithstanding any other provisions of this chapter," RCW 4.84.030 does not apply to land use litigants.

The trial court disagreed, and concluded that RCW 4.84.370 did not affect the availability of costs under RCW 4.84.030, which are available to all litigants in superior court. We agree with the trial court. RCW 4.84.370 does not express a legislative intent to limit the applicability of RCW 4.84.030, and we decline to read into the statute legislative intent that is not there. *See State v. Smith*, 144 Wn.2d 665, 674, 30 P.3d 1245 (2001) (declining to find intent to apply legislative amendment retroactively). The two statutes, RCW 4.84.370 and RCW 4.84.030, are in the same chapter, but "notwithstanding" does not mean that the other provisions of the chapter do not apply. Rather, it refers to the fact that land use litigants are not entitled to attorney fees under any other provision of chapter 4.84 RCW.

Finally, the City contends that because of a separate statutory provision, RCW 36.70C.110, which permits recovery for the costs of producing the record for judicial review in LUPA cases, the legislature intended this provision to be the exclusive basis for recovery of costs at the trial court level in land use cases. But costs as defined by chapter 4.84 RCW are broader than those specified in RCW 36.70C.110, and include, among other things, filing fees and service of process fees.

There is nothing in RCW 4.84.370, RCW 4.84.030, or RCW 36.70C.110 which indicates that the legislature in-

---

[22] The trial court could not have awarded costs under RCW 4.84.370 because, by its terms, the statute comes into play only after a party has prevailed at the appellate court, and the party must have prevailed at the local government level in order to be entitled to fees. RCW 4.84.370(1)(a).

tended that costs under RCW 4.84.030 are not available to the prevailing party in land use cases. The trial court did not err in awarding costs to Brown under RCW 4.84.030.

## CROSS APPEAL

Brown contends the court erred in dismissing his claim against the City for violating his right to substantive due process.[23] He claims that DCLU acted beyond its authority in attempting to regulate uses aboard vessels, it failed to consider relevant factors in determining whether there was a violation, and it took inconsistent positions about the meaning and enforcement of SMC 23.60.018.

██ Substantive due process, guaranteed by the Fifth and Fourteenth Amendments of the federal constitution and article I, section 3 of the Washington State Constitution, limits a "state's ability to pass unreasonable or irrational laws which deprive individuals of property rights." *Sintra, Inc. v. City of Seattle*, 119 Wn.2d 1, 21, 829 P.2d 765 (1992). A substantive due process claim requires a showing that interference with property rights was irrational or arbitrary. *Sintra*, 119 Wn.2d at 21. Where a plaintiff alleges that a municipality violated his right to substantive due process, he "bears the burden of demonstrating that the governmental action was arbitrary, irrational, or tainted by improper motive." *See Robinson v. City of Seattle*, 119 Wn.2d 34, 62, 830 P.2d 318 (1992) (citing *de Botton v. Marple Township*, 689 F. Supp. 477, 481 (E.D. Pa. 1988)).

The City's interpretation of its land use code and its actions were not unreasonable. While we agree with the trial court that the City did not have the authority to regulate Brown's use of the *Challenger*, that does not necessarily mean its actions were arbitrary and capricious. As the trial court found: "The City was attempting to apply the logic of the shoreline management regulations and its understandings of what lodging was and did not have a lack

---

[23] Brown also raised a procedural due process claim in his complaint, but abandons that claim on appeal.

of reasoning or standards in mind when it issued the notice of violation."[24]

Brown argues that the trial court erred in dismissing his challenge to the City's regulations on grounds of vagueness. Because the City did not have the authority under the code provision in effect to regulate Brown's use of the M/V *Challenger*, we agree with the trial court that it is not necessary to address the void for vagueness claim Brown raises in his cross appeal. Because the trial court rejected Brown's due process and void for vagueness constitutional claims, it properly dismissed his 42 U.S.C. § 1983 claim for damages.[25]

## CONCLUSION

We conclude that the City lacked authority to regulate the M/V *Challenger* and affirm the court's order vacating the NOV issued to Brown. We also affirm the trial court's award of costs and its dismissal of the remainder of Brown's claims.

COLEMAN and APPELWICK, JJ., concur.

Reconsideration denied July 3, 2003.

---

[24] RP (Oct. 29, 2001) at 75.

[25] Contrary to Brown's argument, his due process argument was considered and rejected below. CP at 537-38.