# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

R. THORESON HOMES, LLC, a )
Washington Limited Liability Company, )
       ) No. 74434-8-I
       Respondent, )
       ) DIVISION ONE
       v. )
       )
NATE PRUDHON, ) PUBLISHED OPINION
       )
       Appellant. ) FILED: December 12, 2016

SPEARMAN, J. — In Seattle, a landlord may only evict a tenant if he or she has "just cause" as provided in the Just Cause Eviction Ordinance (JCEO). Seattle Municipal Code (SMC) § 22.206.160. Under the ordinance, "just cause" exists if the landlord "elects to sell" a rental property as that term is defined in the ordinance. Here, the landlord, relying on the "elects to sell" provision, gave the tenant notice of just cause for eviction after she had already sold the home. The issue is whether the landlord may properly invoke the "elects to sell" provision when the rental property was already sold with the tenant in place. We conclude the "elects to sell" just cause provision applies only to the prospective sale of a rental property. Because there was no just cause for eviction in this case, the trial court's order granting unlawful detainer was in error. We reverse.

## FACTS

Nate Prudhon leased a single-family home in Seattle from Denise and Robert Burnside (Burnsides). After a one year lease expired at the end of June 2012, the tenancy reverted to month-to-month. Prudhon continued to reside at the house. On or about April 2, 2015, the Burnsides entered into a purchase and sale agreement with Blueprint Capital Services, LLC, who assigned the agreement to R. Thoreson Homes, LLC. As part of the purchase and sale agreement, the Burnsides agreed to issue a notice terminating Prudhon's tenancy.[1] Shortly after agreeing to sell the house, the Burnsides served Prudhon with a notice to terminate the tenancy. It stated that "[t]he owner elects to sell a single-family dwelling unit and gives the tenant at least sixty (60) days written notice prior to the date set for vacating . . . ." Clerk's Paper (CP) at 113. On April 11, 2015, the Burnsides transferred the house to R. Thoreson Homes, LLC.

Prudhon made a complaint to the City of Seattle, Department of Planning and Development (DPD). On April 16, 2015, DPD issued a Notice of Violation (NOV) to the Burnsides. The NOV found that the Burnsides violated the Seattle Just Cause Eviction Ordinance (JCEO), and ordered them to rescind the notice to terminate tenancy. As the new owner, R. Thoreson Homes, LLC (Owners) contested the NOV by requesting a Director's review. On May 15, 2015, the DPD issued a Director's Order finding that the Owners violated the JCEO. Still, the Owners did not rescind the notice of termination. They instead filed suit against

---

[1] At oral argument, the Owner acknowledged that the Burnsides agreed to issue a notice terminating Prudhon's tenancy as part of the purchase and sale agreement.

2

the City of Seattle (City) and Prudhon for declaratory and injunctive relief on June 11, 2015. CP at 182. Then on July 23, 2015, the Owners filed a complaint for unlawful detainer and requested a show cause hearing. The trial court granted unlawful detainer on December 3, 2015. A writ of restitution was entered on December 11, 2015. Prudhon moved for reconsideration and to stay the writ of restitution which the trial court denied. The trial court entered a judgment against Prudhon for $17,725.46 in attorney fees and costs. Prudhon appeals.

## DISCUSSION

Prudhon argues that the "elects to sell" notice terminating his tenancy was invalid under the JCEO because it was issued after the Burnsides sold the property. Prudhon's interpretation of the JCEO requires landlords to provide notice of termination before entering an agreement to sell the rental property. The Owner argues that the JCEO "elects to sell" provision unambiguously permits a landlord to terminate a tenancy after a rental property has been sold.

Interpretation of a statute presents a question of law reviewed de novo. Ruvalcaba v. Kwang Ho Baek, 175 Wn.2d 1, 6, 282 P.3d 1083 (2012). Courts interpret local ordinances the same as statutes. Sleasman v. City of Lacey, 159 Wn.2d 639, 643, 151 P.3d 990 (2007). The court's primary duty in interpreting a statute is to "'discern and implement the intent of the legislature.'" State v. J.P., 149 Wn.2d 444, 450, 69 P.3d 318 (2003) (quoting Nat'l Elec. Contractors Ass'n v. Riveland, 138 Wn.2d 9, 19, 978 P.2d 481 (1999)). We begin with the statute's plain meaning. Id. We discern plain meaning from the ordinary meaning of the language, related provisions in the statute, and the statutory scheme as a whole.

3

State, Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 11, 43 P.3d 4, 10 (2002). The plain meaning is "derived from what the Legislature has said in its enactments, but that meaning is discerned from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." Id. A statute is unambiguous where the plain language is susceptible to only one reasonable reading. J.P., 149 Wn.2d at 450 (citing State v. Wilson, 125 Wn.2d 212, 217, 883 P.2d 320 (1994)).

In Seattle, a landlord cannot evict, or attempt to evict, a residential tenant without just cause. Former SEATTLE MUN. CODE 22.206.160(C) (2011). The landlord must provide a termination notice stating the reason for the termination and facts supporting that reason. Former SMC 22.206.160(C)(3). There is just cause for eviction if the owner elects to sell the rental property:

> The owner elects to sell a single-family dwelling unit and gives the tenant at least 60 days' written notice prior to the date set for vacating. . . . For the purposes of this Section 22.206.160, an owner "elects to sell" when the owner makes reasonable attempts to sell the dwelling within 30 days after the tenant has vacated, including, at a minimum, listing it for sale at a reasonable price with a realty agency or advertising it for sale at a reasonable price in a newspaper of general circulation. There shall be a rebuttable presumption that the owner did not intend to sell the unit if:
> (1) Within 30 days after the tenant has vacated, the owner does not list the single-family dwelling unit for sale at a reasonable price with a realty agency or advertise it for sale at a reasonable price in a newspaper of general circulation, or
> (2) Within 90 days after the date the tenant vacated or the date the property was listed for sale, whichever is later, the owner withdraws the rental unit from the market, rents the unit to someone other than the former tenant, or otherwise indicates that the owner does not intend to sell the unit;

Former SMC 22.206.160(C)(1)(f). (Emphasis added.)

The parties dispute whether the Burnsides can "elect to sell" property that they already sold. Prudhon adopts the City's interpretation of the ordinance, which is that "elects to sell" applies to owners who intend to sell, and have not already sold, the property. CP at 37. The Owner argues that "elects to sell" includes an owner who intends to sell *or* has already sold the property.

To determine whether the plain language of "elects to sell" encompasses property that was already sold, we begin with its ordinary meaning. The ordinance defines "elects to sell" as "when the owner makes reasonable attempts to sell the dwelling within 30 days after the tenant has vacated . . . . Former SMC 22.206.160(C)(1)(f). The Owner argues that this definition merely provides an end date by which there must be attempts to sell, and therefore does not preclude the prior sale of property. "Elects to sell" is defined by an owner's activities after the tenant vacates, such as listing the property for sale with a realty agency or in a newspaper. These are relevant only to the prospective sale of property. The provision also employs phrases oriented toward future action: an owner "elects" to sell, "attempts" to sell, and "intends" to sell after the tenant vacates pursuant to just cause notice. While the ordinance may not expressly preclude a prior sale, neither does it contemplate a prior sale. The ordinance definition supports Prudhon's interpretation of the statute because it defines "elects to sell" with prospective action: attempting to sell after the tenant has vacated.

Related provisions and Seattle's statutory scheme further elucidate the plain meaning of this ordinance. The JCEO provides just cause for eviction under

5

a variety of circumstances. There is just cause for eviction to allow an owner or his or her family to occupy the property. SMC 22.206.160(C)(1)(e). There is also just cause for an eviction if an owner seeks to do substantial rehabilitation or demolish the rental property, but only if the owner obtains a tenant relocation license that assists low-income tenants displaced by development. SMC 22.206.160(C)(1)(h)(i); SMC 22.210.020(B). The "elects to sell" just cause provision allows an owner to place a rental home on the market without a tenant in place. Former SMC 22.206.160(C)(1)(f). However, there is no just cause to evict simply because a new owner acquires the property.

We harmonize related provisions in a statute whenever possible. Davis v. Cox, 183 Wn.2d 269, 283, 351 P.3d 862 (2015) (citing State v. Hirschfelder, 170 Wn.2d 536, 543, 242 P.3d 876 (2010)). The Owner argues that SMC 22.206.160(C)(1)(f)(2) is inconsistent with an interpretation of "elects to sell" that requires the tenant to have vacated the property before an owner makes reasonable attempts to sell it. That section creates a rebuttable presumption that the owner did not intend to sell the property if:

> Within 90 days after the date the tenant vacated or the date the property was listed for sale, whichever is later, the owner withdraws the rental unit from the market, rents the unit to someone other than the former tenant, or otherwise indicates that the owner does not intend to sell the unit[.]

The Owner argues that if an owner cannot make any attempts to sell until the tenant has vacated the property, then the provision would be meaningless because 90 days after the property is listed for sale is always later than 90 days after the tenant has vacated the property. Thus, the Owner contends that to

harmonize the provisions we must read SMC 22.206.160(C)(1)(f) as permitting the sale to occur before the tenant vacates the property.

The argument is unpersuasive. First, whether an owner may list a property for sale prior to it being vacated by the tenant is not at issue in this case. The issue before us is whether an owner may enter into an agreement to sell the property and, as part of the agreement, agree to evict the tenant using the "elects to sell" provision of the JCEO. Second, the Owner's analysis is flawed because it is improperly limited to an alleged inconsistency in a single section of the JCEO. It fails to reconcile other related provisions and the statutory scheme of the JCEO as a whole. Viewing the ordinance as a whole, the Owner's interpretation of "elects to sell" allows developers to frustrate Seattle's tenant protection scheme and the tenant relocation license requirement. The statutory scheme confirms that the provision's plain language is not reasonably susceptible to the interpretation proposed by the Owner.

We do not defer to an agency's interpretation of an unambiguous statute. Brown v. City of Seattle, 117 Wn. App. 781, 72 P.3d 764 (2003), as corrected (Aug. 14, 2003). But here, the City's interpretation of the ordinance is consistent with the unambiguous language defining "elects to sell." The Director's Order clearly explains that this interpretation enables the policy goals of the JCEO:

> Once a property is sold with the tenant in place, it is up to the new owner to determine whether to keep the tenant or whether there is just cause to terminate their tenancy. If, as is apparently the case here, the new owner wants to tear down the housing and build replacement housing, then the new owner is required to go through the Tenant Relocation Assistance License prior to giving the tenant notice to move; the tenant relocation process provides the just

7

cause. The owner cannot rely on an "intent to sell" just cause designed to allow an owner to make a property more saleable by offering it without a tenant in place, if the property has already been sold with a tenant in residence. And, to allow this just cause to be applied in these circumstances would enable the new owner to evade obligations under the Tenant Relocation Assistance Ordinance and thereby frustrate the intent of that ordinance.

CP at 39.

The Owners deployed the "elect to sell" just cause provision to their benefit: they wished to take possession of the property tenant-free. At oral argument, the Owners concede that they bargained for this result, as the Burnsides agreed to issue the just cause notice to terminate in the purchase and sale agreement. The Owner cannot circumvent the requirements of the JCEO and Tenant Relocation licensing scheme by invoking "elects to sell" just cause where the property was sold with a tenant in place. We conclude that this provision does not provide just cause for eviction where, prior to issuing a notice to terminate, an owner contracts to sell rental property with a tenant in place. Thus, the Owner's notice terminating tenancy violated the JCEO and the trial court erred when it granted an unlawful detainer on the basis of an invalid notice.

Attorney Fees

The trial court awarded the Owner $17,725.46 in attorney fees and costs. Prudhon requests that we reverse the trial court's judgment granting attorney fees and costs to the Owner and award him attorney fees and costs as the prevailing party. A prevailing party may recover attorney fees authorized by statute, equitable principles, or agreement between the parties. Landberg v. Carlson, 108 Wn. App. 749, 758, 33 P.3d 406 (2001). If such fees are allowable

8

at trial, the prevailing party may recover fees on appeal as well. RAP 18.1. Here, the lease agreement between the parties provided for attorney fees. As the prevailing party, Prudhon is entitled to reasonable fees and costs incurred in the proceedings below and on appeal.

Reverse.

WE CONCUR:

Spearman, J.

Becker, J.