IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| SOLOMON ALEMU, an individual; GETACHEW TADESSE, an individual; TESFAYE AYELE, an individual, | No. 80376-0-I |
| Respondents, | DIVISION ONE |
| | UNPUBLISHED OPINION |
| v. | |
| IMPERIAL PARKING (U.S.), LLC, a foreign limited liability company, dba Impark, | |
| Appellant. | |

SMITH, J. — Chapter 7.45 SeaTac Municipal Code (SMC) promotes a living wage for employees working in SeaTac, Washington. Specifically, SMC 7.45.050 requires defined hospitality and transportation employers who employ a certain number of employees to pay those employees $15 per hour. Imperial Parking (U.S.) LLC (Impark) managed the SeaTac DoubleTree Hotel's (Hotel) parking lot by providing, among other services, valet for the Hotel's guests. This case involves a narrow issue of statutory interpretation as to whether Impark is a hotel subcontractor subject to SMC 7.45.010(D)'s $15 per hour minimum wage requirement.

Impark employees brought a putative class action against Impark for failure to pay $15 per hour. Impark appeals the trial court's orders granting in part the plaintiffs' motion for summary judgment and denying Impark's motion for

Citations and pin cites are based on the Westlaw online version of the cited material.

summary judgment on the issue of the ordinance's application to Impark. Because valet parking is a service that Impark provided to the Hotel's guests and Impark was a subcontractor of the Hotel, we conclude that Impark is subject to the ordinance. We affirm the trial court's orders. Therefore, we remand this matter to the trial court to proceed.

BACKGROUND

In 2013, SeaTac voters passed Proposition 1, which required a $15 minimum hourly wage, including an escalator provision for wages thereafter. Proposition 1 stated: "This Ordinance requires certain hospitality and transportation employers to pay specified employees a $15.00 hourly minimum wage, adjusted annually for inflation, and pay sick and safe time of 1 hour per 40 hours worked."[1] The proposition's explanatory statement provided:

> This measure, proposed by initiative petition by the people, adds a new chapter to the SeaTac Municipal Code requiring certain hotels, restaurants, rental car businesses, shuttle transportation businesses, parking businesses, and various airport related businesses, including temporary agencies or subcontractors operating within the City, to:
> - Pay covered employees an hourly minimum wage of $15.00, excluding tips, adjusted annually for inflation.
> . . . .
> Covered employees are non-managerial, non-supervisory employees of these certain businesses who work within the City.[2]

The statement in favor of Proposition 1 declared:

> Since the start of the recession, millions of dollars have been cut

---

[1] King County Official Local Voters' Pamphlet, General and Special Election 94 (Nov. 5, 2013), https://www.kingcounty.gov/~/media/depts/elections/how-to-vote/voters-pamphlet/2013/201311-voters-pamphlet-ed1.ashx?la=en [https://perma.cc/V2YJ-WEJ3].

[2] King County Official Local Voters' Pamphlet at 94.

from our vital community services and local families are struggling. Meanwhile, big overseas and multinational corporations doing business at the airport racked up hundreds of millions in profits last year -- yet continue to use the recession as an excuse to cut wages, hours, and benefits. This hurts all of SeaTac.

Proposition 1 requires airport-related employers do the right thing and give our community an opportunity to succeed. By putting the public good ahead of corporate greed, it will create middle class jobs, enabling families to buy more in local stores and restaurants—boosting SeaTac's economy. That's why Proposition 1 is endorsed by small business owners, teachers, nurses, firefighters, and faith leaders across SeaTac.[3]

(Emphasis omitted.) Subsequently, SeaTac enacted the proposition as SMC chapter 7.45 (ordinance), which took effect on January 1, 2014.

FACTS

Impark is a parking lot management company, and in 2002, it entered into a parking services agreement (PSA) with the Hotel. Pursuant to the PSA, Impark—labeled as "Contractor" in the PSA—agreed to operate, maintain, and manage the Hotel's parking facility, which included 958 parking spaces, around 450 of which were reserved for valet parked vehicles. Under the PSA, the Hotel granted Impark a license to utilize and manage the parking facility "for the sole purpose of providing valet and self parking allowing employees, guests and invitees of the Hotel to park their vehicles." Throughout its contract with the Hotel, Impark employed between 7 and 23 employees, including 5 supervisory employees.

Between January 1, 2014, and August 27, 2018, Impark paid the plaintiff employees between $11 and $13 an hour for their work. In April 2018, these

---

[3] King County Official Local Voters' Pamphlet at 94.

3

former Impark employees, including Solomon Alemu, brought a putative class action alleging that Impark was subject to and violated SMC 7.45.050, which set the $15 per hour minimum wage for hospitality employees within SeaTac.

In January 2019, the parties filed cross motions for summary judgment on the issue of whether Impark was a covered employer. The trial court granted partial summary judgment for the employees, concluding that Impark was subject to the ordinance. Specifically, the trial court concluded that Impark qualified as a hospitality employer under SMC 7.45.010(D)[4] and was required to pay a minimum wage of at least $15 per hour.

Impark sought discretionary review, which we granted.

## ANALYSIS

### Standard of Review

The parties agree that the dispositive issue in this appeal is whether the trial court erred by concluding that SMC 7.45.010(D) applied to Impark and granting partial summary judgment in favor of the employees.

"Summary judgment is appropriate where there is no genuine issue as to any material fact, so the moving party is entitled to judgment as a matter of law." Meyers v. Ferndale Sch. Dist., No. 98280-5, slip op. at 6 (Wash. Mar. 4, 2021), http://www.courts.wa.gov/opinions/pdf/982805.pdf. "We view the facts and reasonable inferences in the light most favorable to the nonmoving party." Meyers, slip op. at 6. "We review rulings on summary judgment and issues of

---

[4] SMC 7.45.010(D) states that a "Hospitality Employer" "shall include any person who employs others providing services for customers on the aforementioned premises, such as a temporary agency or subcontractor."

statutory interpretation de novo." Am. Legion Post No. 149 v. Dep't of Health, 164 Wn.2d 570, 584, 192 P.3d 306 (2008).

### Hospitality Employer Subcontractor

Impark contends that, in order to be subject to the ordinance as a hospitality employer's subcontractor, it must employ 30 or more employees. We disagree.

"We . . . construe a municipal ordinance according to the rules of statutory interpretation." City of Seattle v. Swanson, 193 Wn. App. 795, 810, 373 P.3d 342 (2016). And "[i]nitiatives will be interpreted from their plain language, if possible. However, when an initiative is susceptible to multiple interpretations, we employ the standard tools of statutory construction to aid our interpretation." Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1, 149 Wn.2d 660, 670, 72 P.3d 151 (2003). In statutory interpretation, our main "'objective is to ascertain and carry out the Legislature's intent.'" Seattle Hous. Auth. v. City of Seattle, 3 Wn. App. 2d 532, 538, 416 P.3d 1280 (2018) (quoting Citizens All. for Prop. Rights Legal Fund v. San Juan County, 184 Wn.2d 428, 435, 359 P.3d 753 (2015)). "We derive legislative intent solely from the plain language of the statute, considering the text of the provision, the context of the statute, related provisions, amendments, and the statutory scheme as a whole." PeaceHealth St. Joseph Med. Ctr. v. Dep't of Revenue, 196 Wn.2d 1, 7-8, 468 P.3d 1056 (2020). And "[t]he words of an initiative will be read 'as the average informed lay voter would read [them].'" Parents Involved in Cmty. Sch., 149 Wn.2d at 671 (second alteration in original) (quoting W. Petrol. Imps., Inc. v. Friedt, 127 Wn.2d 420,

424, 899 P.2d 792 (1995)).

Under SMC 7.45.010(D), a hospitality employer is a hotel, a foodservice or retail operation, or a temporary agency or subcontractor who provides services for these business. The ordinance defines a hospitality employer as a person

> who operates within the City any hotel that has one hundred (100) or more guest rooms and thirty (30) or more workers [(hotel employer clause)] or who operates any institutional foodservice or retail operation employing ten (10) or more nonmanagerial, nonsupervisory employees [(foodservice employer clause)]. *This shall include any person who employs others providing services for customers on the aforementioned premises*, such as a temporary agency or subcontractor [(subcontractor clause)].

SCM 7.45.010(D) (emphasis added).

The parties do not dispute that Impark is a subcontractor for the Hotel. We agree that Impark is a subcontractor.[5] In addition, Impark agrees that certain hotel subcontractors are subject to the ordinance "if it meets the requirements set out in the first sentence," i.e., employing 30 workers. Accordingly, we must determine the proper construction and application of the subcontractor clause to the preceding clauses.

Here, the ordinance includes two preceding clauses beginning with "who operates." The straightforward reading of the ordinance applies the subcontractor clause to these two preceding clauses. That is, a subcontractor to

---

[5] The evidence supports this conclusion. Specifically, the Hotel provides parking services to and for its guests, including valet, and the Hotel granted Impark a license to perform those parking services for the Hotel's guests. To this end, the hotel controlled the parking facility's uses; Impark's employees' uniforms, greetings, and personal appearance; and the parking rates that Impark could charge. Thus, because Impark provided the Hotel's valet services to the Hotel's customers, Impark fits within the definition of subcontractor.

6

both a hospitality employer *and* an institutional foodservice employer may be subject to the ordinance. And if the subcontractor clause did not apply to the hotel clause, a hotel would be allowed to subcontract for all of the work on its premises, including maid services, receptionists, and valets, and evade the ordinance entirely. We are not persuaded that this is how the average lay voter would have understood the initiative.

In particular, the context of the subcontractor clause supports the ordinance's application to Impark.[6] One reasonable reading of the statute would be that the employee limitations in the hotel employer and foodservice employer clauses also apply to the subcontractor clauses and that would conform to certain statutory construction rules. However, here, it would lead to a strained result, namely that a hotel subcontractor must not only employ 30 or more workers but also must own a hotel with 100 guestrooms.[7] And the court should

---

[6] During oral argument, counsel for Alemu asserted that the employees were not trying to include "one shoe shine boy who shows up on one day" in the meaning of hospitality employer. Wash. Court of Appeals oral argument, Alemu v. Imperial Parking (U.S.), LLC, No. 80376-0-I (Jan. 15, 2021), at 8 min., 16 sec. to 8 min., 18 sec., *video recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org. We assume that counsel was somehow unaware or did not recall the racist history of the use of the term "shoe shine boy" as a derogatory term to describe Black men operating shoe shine stands in America. But the racist history exists: "The American white relegates the black to the rank of shoeshine boy; and he concludes from this that the black is good for nothing but shining shoes." — George Bernard Shaw

It is long past time to discontinue the use of terms with racist origins. They should not be tolerated anywhere and, in particular, have no place in a court of law.

[7] Impark contends that the "[p]laintiffs spend much of their brief attacking an argument they falsely attribute to Impark: That a Hotel subcontractor must *itself* operate 100 or more guest rooms to be a covered Hospitality Employer." While Impark does not make this argument, it is the logical extension of Impark's interpretation of the ordinance to exclude a hotel's employee requirement.

7

"avoid an interpretation that results in unlikely or strained consequences."

Swanson, 193 Wn. App. at 811. Similarly, to read the ordinance in this way would require us to add language to the ordinance: where the ordinance requires only that the subcontractor "employs *others*," Impark asks us to read it as meaning that the ordinance applies to a subcontractor who "employs *30* others." But we will not add words to a statute. See Swanson, 193 Wn. App. at 810 (We "'must not add words where the legislature has chosen not to include them.'" (internal quotation marks omitted) (quoting Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010))).

The next question is whether the hotel employer clause's employee threshold[8] applies to a subcontractor for a hotel employer. To this end, the ordinance's purpose is best served by the inclusion of subcontractors like Impark, notwithstanding the employer's number of hired staff. The ordinance's intent is clear from the ordinance itself: to protect small businesses while at the same time ensuring a living wage for SeaTac workers. It is not inconsistent with the ordinance's intent that a small subcontractor be subject to the ordinance. To the contrary, to provide a living wage for employees in SeaTac's hospitality industry, the ordinance explicitly included subcontractors. That is, the ordinance's inclusion of subcontractors signifies that its drafters foresaw the possibility that large employers might subcontract work, denying otherwise qualified workers the

---

[8] For the sake of brevity, we refer to the ordinance's required number of employees for a hotel employer and for a foodservice employer as the "employee threshold." A hotel's employee threshold is 30 or more workers, and a foodservice business's employee threshold is 10 or more nonmanagerial, nonsupervisory employees. SMC 7.45.010(D).

increased minimum wage.

For these reasons, including the ordinance's plain language and purpose, and the context of the subcontractor clause, we conclude that a hotel employer's subcontractor does not need to employ 30 employees. Therefore, the trial court did not err when it granted partial summary judgment in favor of the employees and denied Impark's motion for summary judgment.[9]

*Transportation Employer*

Impark asserts that because it performs transportation employer functions, it cannot be considered a hospitality employer. We disagree.

Impark is a transportation employer under the plain meaning of SMC 7.45.010(M)(2)(a)-(b). A transportation employer is "any person who: a. Operates or provides . . . *parking lot management* controlling more than one hundred (100) parking spaces; and b. Employs twenty-five (25) or more nonmanagerial, nonsupervisory employees in the performance of that operation." SMC 7.45.010(M)(2)(a)-(b) (emphasis added). Impark managed a parking lot of more than one hundred parking spaces, falling under the definition of transportation employer. However, it did not meet the employee threshold

---

[9] Impark disagrees, contending that the employees "previously conceded that the second sentence of the definition of Hospitality Employer incorporates the employer size requirements in the first sentence." In a June 2018 letter to Impark, the employees asserted that Impark was subject to the ordinance because it employed 10 or more nonmanagerial, nonsupervisory employees. Thus, the assertion seems to contend that a subcontractor is subject to the retail and food services employee threshold. However, it does not necessarily follow that the employees conceded that subcontractors are subject to the employee requirements of hotel employers. Therefore, we are not persuaded that this vague statement constitutes a concession.

because it employed less than 25 workers. Thus, Impark is not subject to the ordinance as a transportation employer. However, this does not exempt Impark from the other provisions of the ordinance.

Saucedo v. John Hancock Life & Health Insurance Co. is instructive. 185 Wn.2d 171, 369 P.3d 150 (2016). There, farmworkers brought a class action lawsuit against four corporations, and the United States Court of Appeals for the Ninth Circuit certified two questions regarding Washington's farm labor contractor act (FLCA), chapter 19.30 RCW, to our state Supreme Court. Saucedo, 185 Wn.2d at 174-75. The FLCA contained specific licensing requirements for farm labor contractors, but it also defined agricultural employee and agricultural employer. Saucedo, 185 Wn.2d at 176, 180. In answering the question of whether one defendant corporation was subject to the FLCA licensing requirements as a farm labor contractor, the court declined to adopt that defendant's argument. Saucedo, 185 Wn.2d at 180. Specifically, the defendant argued that, because it fell under the definition of agricultural employee and agricultural employer, it could not be a farm labor contractor. Saucedo, 185 Wn.2d at 180. The court concluded that "the legislature did not make the three categories of 'person' defined in [the FLCA] mutually exclusive," noting that "'[t]he fact that [the defendant] . . . also meets the statutory definition of agricultural employer is irrelevant.'" Saucedo, 185 Wn.2d at 180 (third alteration in original) (internal quotation marks omitted). The court therefore held that the defendant was subject to the farm labor contractor licensing requirements. Saucedo, 185 Wn.2d at 180.

Like in Saucedo, there is nothing in the ordinance that says that employers, which perform transportation employer functions but do not meet the employee threshold, are exempt from the ordinance as a hotel's subcontractor. In short, like the FLCA in Saucedo, the ordinance does not make these definitions mutually exclusive. Therefore, Impark can be both a transportation employer, not subject to the ordinance, and a hospitality employer's subcontractor, subject to the ordinance.

Impark disagrees and relies on Brown v. City of Seattle to support its interpretation that the two types of employers are mutually exclusive.[10] 117 Wn. App. 781, 72 P.3d 764 (2003). There, Frederick Brown operated a bed and breakfast on his tugboat. Brown, 117 Wn. App. at 783. After Brown received a notice of violation for failing to obtain a development permit while mooring the boat at the Yale Street Marina, he filed a lawsuit against the city of Seattle. Brown, 117 Wn. App. at 783. Brown asserted that the tugboat fell under Seattle Municipal Code 26.60.018, which exempted "'the operation of boats, ships and other vessels designed and used for navigation'" from development permit

---

[10] The other cases cited by Impark for this proposition are readily distinguishable. See Knowles v. Holly, 82 Wn.2d 694, 700-02, 513 P.2d 18 (1973) (refusing to invalidate write-in candidate's votes that failed to mark an X by the write-in candidate and where the voting statute required voters to mark an X after their desired candidate *except* when the voter wrote in the name of the candidate); W. Plaza LLC v. Tison, 184 Wn.2d 702, 712-13, 364 P.3d 76 (2015) (declining to apply the general tenancies statute of frauds to mobile home lot tenancies because, among other issues, the mobile home statute "explicitly distinguishe[d] between the rules governing the rental of mobile home lots from the rules governing other tenancies"); Jama v. Golden Gate Am. LLC, No. C16-0611RSL, 2017 WL 44538, at *2-3 (W.D. Wash. Jan. 4, 2017) (court order) (holding that the defendant company, which transported and cleaned rental cars in SeaTac, did not fall within the definition of transportation employer).

11

requirements. Brown, 117 Wn. App. at 784-85. Because the boat was designed and used for navigation, we held that the exemption applied and that Brown was not required to obtain a development permit. Brown, 117 Wn. App. at 793.

Brown is distinguishable. There, the ordinance provided an explicit and specific exemption for vessels used for navigation. Here, the ordinance does not provide such an exemption, i.e., it does not state that a transportation employer, who employs less than 25 workers is exempt from the ordinance. Rather, it merely regulates a transportation employer that employs 25 workers or a hospitality employer or its subcontractor. For these reasons, Impark's contention is without merit.

We affirm the trial court's orders in favor of the employees. Therefore, we remand to the trial court for the matter to proceed.

_____

WE CONCUR:

_____   _____